Jason C. Beckstead
Jay@BHBfirm.com
CA Bar No. 223148
AZ Bar No. 023095
USPTO Bar No. 48,232
Buesing, Hernacki & Beckstead, PLLC
111 W. Monroe St., Ste 320
Phoenix, Arizona 85003
(602) 388-8645 (P)
(602) 218-4450 (F)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| WARREN A. BRAITHWAITE,<br><br>          Plaintiff,<br><br>v.<br><br>MARICOPA COUNTY CORRECTIONAL HEALTH SERVICES, MARICOPA MEDICAL CENTER, MARICOPA COUNTY SHERIFF'S OFFICE, MARICOPA COUNTY (A MUNICIPAL ENTITY) AND JOHN DOES 1-50,<br><br>          Defendants. | Civil Action No.: <u>to be assigned by the Clerk of the Court</u><br><br>COMPLAINT |

I.   <u>COMPLIANT FOR VIOLATIONS UNDER 42 U.S.C. SECTION 1983: DELIBERATE INDIFFERENCE TO A PRETRIAL DETAINEE'S IMMEDIATE AND URGENT HEALTH CARE NEEDS</u>

Plaintiff, Warren A. Braithwaite, through his attorneys, hereby complains against Defendants Maricopa County Correctional Health Services ("CHS"), Maricopa Medical Center ("MMC"), the Maricopa County Sheriff's Office ("MCSO"), Maricopa County (a

municipal entity), and John Does 1-50 (collectively "Defendants") and alleges as follows:

## NATURE OF THE CASE

1. This is an action brought under 42 USC Section 1983, the United States Constitution, the Fourteenth Amendment to the United States Constitution, and other pendent statutory and common laws, asserting deliberate indifference to Mr. Warren Braithwaite's immediate and urgent health care needs as a pretrial detainee being held in custody by the Maricopa County Sheriff's Office pending the resolution of his state criminal matter.

2. This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1988. Additionally, this Court has jurisdiction over any of Plaintiffs' state and federal claims pursuant to Article 6, Section 14 of the Arizona Constitution.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the parties are presently residents of Maricopa County, Arizona, and the events underlying this lawsuit occurred in Maricopa County.

4. At all times material herein, including from June 23, 2011, until the present date, Plaintiff Warren Braithwaite has been a resident of Maricopa County due to being incarcerated in the county jail as a pretrial detainee.

5. At all times material herein, Defendants have been residents and/or government entities of Maricopa County.

6. At all times material herein, Defendants' actions and/or inactions under the color of state law constitute actions of Maricopa County, and Maricopa County is vicariously and directly liable for all of Defendants' wrongful conduct, as alleged herein.

7. Defendant Maricopa County (the "County") is a public entity, formed and designated as such pursuant to Title 11, of the Arizona Revised Statutes, and (as such) it and its officers and divisions are subject to civil suit and may be held independently or vicariously liable for the wrongful conduct of its divisions, agents, officers, and employees, including *(inter alia),* CHS, MMC, and/or MCSO.

8. At all times material herein, Defendants John Does 1-50 and Jane Does 1-50 (collectively "John Does") were officers, agents, and employees of CHS, MMC, MCSO, and/or Maricopa County, acting within the scope of their employment and under color of law. These Defendants engaged in wrongful conduct that allowed, caused, and/or contributed to cause the violations of Warren Braithwaite's rights. Their actions and/or inactions constitute actions of CHS, MMC, MCSO, and/or Maricopa County. CHS, MMC, MCSO, and/or Maricopa County are vicariously and directly liable for their wrongful conduct.

9. The true names, capacities, and relationships, whether individual, corporate, partnership, or otherwise of all John Doe Defendants are unknown at the time of the filing of this Complaint, and are being designated pursuant to applicable law. Plaintiffs further allege that all of the fictitiously named Defendants were jointly responsible for the actions, events, and circumstances underlying this lawsuit, and that they proximately caused the damages stated in this Complaint. Plaintiffs will amend the Complaint to name the unidentified individuals once they have identified, through discovery, the identities and acts, omissions, roles, and/or responsibilities of such Defendants sufficient for Plaintiffs to discover the claims against them.

**FACTUAL BASIS FOR CLAIMS FOR RELIEF**

10. Warren Braithwaite was diagnosed with a rare cancer of the blood plasma known as multiple myeloma in 2006. He nearly died in 2006/2007 from an improper initial treatment of the disease due to it being uncommon. He had kidney failure and dialysis. A multitude of oncologists were unable to treat or otherwise help Mr. Braithwaite. What he needed was a multiple myeloma doctor, a physician that is just about as rare as the disease itself. Warren found a multiple myeloma doctor at the University of Southern California Norris Cancer Center (Dr. Mohrbacher) who was able to save his life through a bone marrow transplant.

11. While multiple myeloma is not curable, its symptoms can be controlled and a patient's life thereby prolonged. Prior to his incarceration with MCSO beginning June 23, 2011, Dr. Mohrbacher had Warren Braithwaite in a state of good, partial remission.

12. Following his incarceration, Warren Braithwaite is believed to have relapsed due to inadequate health care within MCSO as provided by CHS and MMC. CHS was informed by Mr. Braithwaite during his medical intake that he suffered from the disease of multiple myeloma.

13. Mr. Braithwaite began to pass blood in his stool, and sometimes nothing but blood instead of a stool while under the care of CHS and MMC, and CHS has been aware of this since at least September 9, 2011.

14. CHS has been aware since at least September 27, 2011 that Mr. Braithwaite has blood in his urine.

15. Mr. Braithwaite is not only passing blood in his stool and in his urine, but his feet are bleeding; additionally, he has had bleeding from his nose that is not otherwise explainable.

16. Mr. Braithwaite often has his bloody socks, jail slippers, and jail shirt confiscated without any medical report made by CHS personnel in the Lower Buckeye Jail ("LBJ") infirmary.

17. Mr. Braithwaite is presently held in solitary confinement in the LBJ infirmary to limit the number of potential witnesses to his present deteriorating condition.

18. Mr. Braithwaite has black spots on his feet that are spreading up his legs and are beginning to show on his hands; this is a symptom of multiple myeloma known as "cryoglobulinemia," a condition peculiar to this and other rare forms of disease.

19. Mr. Braithwaite has exhausted all of his internal procedural remedies within the jail, to wit, he has filled out at least four grievance forms, the responses to which have not addressed his immediate and urgent health care need to see a multiple myeloma doctor.

20. The most-recent grievance form was completed by Mr. Braithwaite on October 11, 2011. In that grievance form he wrote:

> This is my fourth request about my pain in my abdominal and blood in my stool. The pain is also still in my legs. I also have blood in my urine and stool, black spots on the bottoms of my feet and warts are still coming out. I got to the infirmary at 3:10 on October the 6th in the morning. I still have not seen a multiple myeloma doctor. I still am not receiving any treatment for the blood in my urine, stool, pain in my legs and black

4

>spots on the bottoms of my feet, also progressive weight loss. I am just here in my bed, dying. All that the infirmary is doing for me is checking my vitals. It is now 7 days I am here. This is still on-going from September the 14th.

21. In a grievance form dated September 9, 2011, Mr. Braithwaite informed CHS in writing that:

>I was off my medication for 13 days. I got back on Saturday the 17th [of September]. I went to the doctor for check-up. He pressed on my stomach and I felt a lot of pain. I told him that it hurt and he told me that I was a big boy. It was doctor Friedmon. Now I'm noticing blood in my stool every time I go to the bathroom.

22. The written response by CHS to Mr. Braithwaite's urgent medical need was: "Please schedule 0230 for provider to review p's c/o blood in stool."

23. The review of Mr. Braithwaite's grievance of September 9, 2011, asserting blood in his stool is described in Mr. Braithwaite's next written grievance form, dated September 22, 2011:

>I've been off my medication for 13 days and I'm experiencing severe sharp pain in my stomach. I went to health care on 9-21-11 at 11:30 AM to see the doctor. I was informed of procedure to test for bleeding: to draw and check my blood-count and the second procedure was to use K-Y jelly and insert his finger in my rectum. I informed the doctor that I would prefer to have my blood drawn. At this time he threw me out of his office yelling at me, exhibiting a lack of professionalism. I asked the doctor for his name and he replied # 126. There where officers present who witnessed it. His name is officer Reed.

24. Mr. Braithwaite's chemotherapy medication ("Revlimid") is prescribed for a 21 day period, after which he is supposed to have a 7 day period that he is off the medication. Revlimid is itself a potentially dangerous drug, in that it can cause kidney failure if not properly monitored. Every 21 day prescription has a form that the patient is supposed to fill out, but contrary to this requirement, employees of CHS have filled out this form without any input from Mr. Braithwaite.

25. Since his incarceration within the Maricopa County jail on June 23, 2011, and due to CHS's deliberate indifference, Mr. Braithwaite's Revlimid chemotherapy has been allowed to lapse a total of three times: (1) once for a total of approximately 13 days instead of a precise 7 days, (2) once for a total of approximately 9 or 10 days instead of a precise 7 days, and (3) presently for an on-going period that began Saturday, October 15, 2011, when he was supposed to re-start another 21 day period (as of the

filing of this suit Mr. Braithwaite has been inappropriately off his chemotherapy for four, going on five, days).

26.   Prior treating multiple myeloma doctor Dr. Mohrbacher (Mr. Braithwaite's physician prior to incarceration) adamantly insisted that Mr. Braithwaite not miss any days of prescribed medication, and, at most, could miss no more than 2 days of his prescribed Revlimid chemotherapy, as documented in Plaintiff's health records as provided to CHS.

27.   CHS personnel have, with deliberate indifference, attempted to force Mr. Braithwaite to take his Revlimid medication more than once a day, something that could be a fatal mistake but for Mr. Braithwaite's personal knowledge that he is not supposed to ingest more than the allowed amount in any 24 hour period.

28.   Mr. Braithwaite called undersigned counsel on both October 12 and 13, to inform counsel of the pain of his disease eating him alive.  <u>In gasped breath and in sobs, Mr. Braithwaite informed counsel that his pain has gotten so bad that he wishes he were dead.</u>

29.   On October 5, 2011, Dr. Joseph Mikhael MD, Med, FRCPC, a myeloma doctor and consultant hematologist ("Dr. Mikhael") of the Mayo Clinic Arizona reviewed Mr. Braithwaite's CHS medical records and medical records prior to his incarceration with MCSO.  Dr. Mikhael's entire practice is devoted to the treatment of multiple myeloma, and after review of Mr. Braithwaite's medical records, he asserted that Mr. Braithwaite needed to be seen as soon as possible:

> **…upon a cursory review of his [Mr. Braithwaite's] file, I am very concerned about the state of his disease and would suggest that we arrange…laboratory investigation and a bone marrow test as soon as possible." (Emphasis added.)**

30.   Despite being provided the urgent request from Dr. Mikhael of the Mayo Clinic on October 6, 2011, counsel for CHS insisted in a state court filing made October 7, 2011, that CHS's decision to move Mr. Braithwaite from the 4th Avenue Jail to the Lower Buckeye Jail infirmary on October 6th, 2011, was not due to deterioration in Mr. Braithwaite's condition since having been incarcerated as a pre-trial detainee, but rather that the move was needed so

as to be able to frequently update the state court regarding his multiple myeloma care.

31.     On October 14, 2011, CHS finally relented under the threat of the present lawsuit to allow Mr. Braithwaite to be seen by the Mayo clinic. It is believed that on today's date, Maricopa County Superior Court Judge the Hon. Joseph Welty signed an Order instructing that Plaintiff be transported to the Mayo Clinic for urgent and necessary treatment by a multiple myeloma doctor.

32.     For at least the dates of June 23, 2011, until October 14, 2011, Defendants acted with deliberate indifference by not having Plaintiff seen by an appropriate medical doctor that could treat Plaintiff to a basic standard of care.

33.     As a direct and proximate result of Defendants' deliberate indifference and wrongful conduct as alleged herein, in not providing a multiple myeloma doctor for Mr. Braithwaite's care for the period of June 23, 2011 until at least the filing of this lawsuit, Warren Braithwaite's constitutional rights have been violated and he has suffered harm and has been injured.

34.     Plaintiff has lost significant weight, and now needs a wheelchair to move. Prior to being incarcerated, Mr. Braithwaite was fully self-mobile without the aid of any handicap devices, i.e., a wheelchair.

35.     Plaintiff was not given any pain medications for his suffering for the time period of June 23, 2011 until October 14, 2011.

36.     Plaintiff, while in the custody and care of MCSO and CHS, was allowed to develop cryoglobulemia, and was not treated for same.

37.     Plaintiff, while in the custody and care of MCSO and CHS, was allegedly diagnosed by CHS/MMC as having hemorrhoids and a urinary tract infection, and yet was not treated for same.

38.     Plaintiff, while in the custody and care of MCSO and CHS, was denied timely life-saving medication in the form of the chemotherapy Revlimid, as outlined above.

39.     All preceding paragraphs are incorporated herein by reference, and all prior allegations are asserted under the light that Defendants, acting under color of state law, were and continue to be

deliberately indifferent to Warren Braithwaite's urgent and immediate health care needs, to wit, the need to see a multiple myeloma doctor, and the need to receive his chemotherapy medication in timely and medically appropriate manner. The wrongful conduct of these Defendants as alleged in this Complaint was undertaken with deliberate indifference, malice and/or with improper and unconstitutional motives. As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

### REQUEST FOR A JURY TRIAL

40. Plaintiff respectfully requests a jury trial.

### MONETARY RELIEF

41. Plaintiff seeks a monetary award based on the violation of rights and physical harm/toll taken on his personal health and well-being as outlined in the preceding paragraphs, and for pain and suffering.

### PRAYER FOR RELIEF

35. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

(a) A monetary award for general damages in an amount to be proven at trial;

(b) Punitive damages in an amount deemed just and reasonable against the individual Defendants as to the causes of action alleged herein;

(c) Costs and attorneys' fees against all Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

(d) The costs of litigation;

(e) All remedies associated with 42 U.S.C. § 1983; and

(f) Such other and further relief which may seem just and reasonable under the circumstances.

Signed _____
Jason C. Beckstead
Attorney for Plaintiff